## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| BRADLEY CASTON, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:25-CV-00100 |
| | : | |
| v. | : | Judge Newman |
| | : | |
| WRIGHT STATE UNIVERSITY, et al. | : | Magistrate Judge Silvain |
| | : | |
| Defendants. | : | |

---

### MOTION TO DISMISS OF DEFENDANT WRIGHT STATE UNIVERSITY

---

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendant Wright State University moves this Court to dismiss Plaintiff's claims in their entirety.  As explained in the Memorandum in Support, this Court lacks subject matter jurisdiction over Plaintiff's claims against Defendant, and the First Amended Complaint otherwise fails to state a claim upon which relief can be granted.

Respectfully submitted,

**DAVE YOST (0056290)**
**Ohio Attorney General**

*/s/ Elizabeth H. Smith*

_____
ELIZABETH H. SMITH (0076701)
ASHLEY A. BARBONE (0083666)
Assistant Attorneys General
Ohio Attorney General's Office
Education Section
30 East Broad Street, 16th Floor
Columbus, OH   43215
Telephone: (614) 644-7250
Facsimile: (614) 644-7634
Elizabeth.Smith@ohioago.gov
Ashley.Barbone@ohioago.gov

*Attorneys for Defendant Wright State University*

<u>**MEMORANDUM IN SUPPORT**</u>

**I.      Introduction**

Bradley Caston ("Caston" or "Plaintiff") was formerly enrolled at the Boonshoft School of Medicine at Wright State University ("Wright State" or "Defendant"). Caston voluntarily withdrew from the program in July 2024 following his failure to meet academic benchmarks including the "Staying Alive" final exam and its retake. Caston did not identify himself as a person with disabilities until *after* he had twice failed the required curriculum and had been recommended for academic dismissal. Moreover, he never submitted evidence of his diagnosis to Wright State nor made a request for accommodation to Wright State's Office of Disability Services. Indeed, by his own admission in the First Amended Complaint, Caston's first mention of his disability to Wright State was after the academic appeals process was underway. Caston now brings this lawsuit alleging that, despite his voluntary withdrawal, he was "constructively dismissed" and denied reasonable accommodations for an alleged disability in violation of Title II of the Americans with Disabilities Act of 1990 ("ADA") and Section 504 of the Rehabilitation Act. Caston's First Amended Complaint must be dismissed in its entirety because it fails to state any valid claims against this Defendant.

**II.     Allegations in the First Amended Complaint**

Caston was enrolled in the Boonshoft School of Medicine at Wright State University. (Doc. 12, ¶ 2). Caston struggled academically and failed the required "Staying Alive" final exam and its retake. (*Id.* at ¶¶ 12-13). Following his second failure of the "Staying Alive" exam, and in accordance with Wright State's policy, Caston was referred to the Student Promotion Committee, who recommended his dismissal for poor academic performance. Thereafter, Caston petitioned the Student Appeals Committee and informed that committee during the appeals process that he had an ADHD diagnosis and, for the first time, alleges he requested academic support. (*Id.* at ¶ 16). It

1

is not alleged in his First Amended Complaint when Caston allegedly informed Wright State of his disability or if he ever requested accommodations outside the Student Appeals Committee process in July 2024. Caston withdrew from the program on July 18, 2024. (*Id.* at ¶ 14). Caston claims his withdrawal was under significant pressure as he believed that if he was formally dismissed from the program, it would irreparably harm his ability to pursue medical school elsewhere. (*Id.* at ¶¶ 14-15).

More than six months after his withdrawal from the program, Caston filed this lawsuit (Doc. 1) claiming that Wright State discriminated against him on the basis of his ADHD disability in violation of the ADA (*Id.* at ¶¶ 19-23) and Section 504 of the Rehabilitation Act (*Id.* at ¶¶ 24-27). Plaintiff's Complaint sought monetary damages and reinstatement. (*Id.* at Prayer for Relief). Plaintiff makes the same claims and same demands in his First Amended Complaint (Doc. 12 at ¶¶ 22-26, 27-30, and Prayer for Relief). As detailed below, this Court lacks subject matter jurisdiction over Caston's claims against Wright State, and even if it did have jurisdiction, Caston's First Amended Complaint fails to state a claim upon which relief can be granted.

## III.     Standard of Review

### A.      The Rule 12(b)(1) Standard.

"When a defendant moves to dismiss on grounds of lack of subject matter jurisdiction, 'the plaintiff has the burden of proving jurisdiction in order to survive the motion.'" *Nichols v. Muskingum College*, 318 F.3d 674 (6th Cir. 2003) (quoting *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)). When a defendant asserts that the plaintiff has not alleged sufficient facts in his complaint to demonstrate subject matter jurisdiction, the Court must take the allegations in the complaint as true. *Id*. at 677.

**B.      The Rule 12(b)(6) Standard.**

A complaint that fails to state a claim upon which relief can be granted is subject to dismissal under Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding whether the complaint is plausible, the Court must interpret it in a light most favorable to the non-moving party, accept factual allegations as true, and give the plaintiff the benefit of reasonable inferences. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). However, the Court is not required to accept as true legal conclusions bereft of supporting factual allegations. *Iqbal*, 556 U.S. at 678.

**IV.     Law & Argument.**

**A.      This Court Does Not Have Subject Matter Jurisdiction and The First Amended Complaint Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1).**

Wright State is a "state university" pursuant to R.C. 3345.011. State universities are arms of the State of Ohio and therefore entitled to Eleventh Amendment immunity. See *Hall v. Medical College of Ohio,* 742 F.2d 299, 1984 U.S. App. LEXIS 19125 (6th Cir. Ohio 1984), cert denied, 489 U.S. 1113, 105 S.Ct. 796, 83 L.Ed.2d 789, 1985 U.S. LEXIS 440 (U.S. 1985); *Bailey v. Ohio State University,* 487 F. Supp. 601, 18 Ohio Op.3d 332, 1980 U.S. Dist. LEXIS 12273 (S.D. Ohio 1980). The Eleventh Amendment to the United States Constitution provides that:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

3

"The Amendment has been interpreted to preclude suit against a state by a citizen of that state, in addition to the express prohibition against suits by citizens of another state. *Marine Mgt., Inc. v. Kentucky*, 723 F.2d 13, 14 (6th Cir.1983).

The Courts have held that the Eleventh Amendment prohibits the federal courts from granting money judgments or injunctive relief against state agencies. *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459 (1945), *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984) (holding "[i]t is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). *See also Underfer v. Univ. of Toledo*, 36 Fed. Appx. 831, 834 (6th Cir. 2002) (applying Eleventh Amendment immunity to a state university of Ohio); *Hutton v. Jackson*, No. 1:06-cv-65, 2007 U.S. Dist. LEXIS 52279, at *7 (S.D. Ohio July 19, 2007) (applying Eleventh Amendment to The Ohio State University ("OSU") and OSU Medical Center). That prohibition applies with equal force to state law claims.[1] *Pennhurst*, 465 U.S. at 106; *Williams v. Kentucky*, 24 F.3d 1526, 1543 (6th Cir. 1994). *Powell v. Morris*, 184 F.R.D. 591, 597 (S.D. Ohio 1998).

In the present case, the Plaintiff seeks relief in a federal court directly against a State institution.  The State of Ohio has not consented to being sued in this Court.  Therefore, this action is barred by the Eleventh Amendment to the United States Constitution, and this Court does not have subject matter jurisdiction over Defendant Wright State.

> **B.** **Even if Jurisdiction Did Attach, Plaintiff's First Amended Complaint Fails to State a Claim Against Wright State and Should Therefore be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).**
>
> > **1. Caston Fails to State a Claim for Disability Discrimination under Title II of the Americans with Disabilities Act.**

---

[1] While it is not entirely clear from his First Amended Complaint, Plaintiff's demand for relief requests damages for "emotional distress and loss of educational opportunity" which sounds in State law tort.

Caston's ADA claims are barred by the Eleventh Amendment. However, if the Court determines otherwise, Caston nevertheless has failed to plead a plausible claim. In Count I, Plaintiff alleges that Wright State discriminated against him and denied him reasonable accommodations in violation of Title II of the Americans with Disabilities Act. It is unclear if he is advancing a discrimination claim *and* a failure to accommodate claim, or just the latter, but Caston fails to state a proper claim for either.

In order to determine whether a Plaintiff may sue the University for money damages under Title II of the ADA, the court must *first* determine on a claim-by-claim basis: (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid. *United States v. Georgia*, 546 U.S. 151, 159 (2006). "However, the constitutional question--abrogation of Eleventh Amendment immunity--is to be reached only after finding a viable claim under Title II." *Sebestyen v. Gardner*, 2021 U.S. Dist. LEXIS 90458, 7 (S.D. Ohio Mar. 27, May 12, 2021) citing *Haas v. Quest Recovery Servs., Inc.*, 247 F. App'x 670, 672 (6th Cir. 2007).

As explained below, Caston has not stated a plausible claim of discrimination or failure to accommodate under Title II of the ADA. As a result, he cannot satisfy the first element of the *Georgia* test and this Court need not address the issue of abrogation further. *Id.* (The Court in *Sebestyen* declining to undertake full *Georgia* analysis where Title II claim failed under the first prong because the amended complaint did not state a valid claim). Any claims against Wright State under Title II of the ADA are thus barred by the Eleventh Amendment.

But even if the Court proceeds to the second and third elements of the *Georgia* test, Caston has not satisfied those either. With regard to the second element, although his First Amended

Complaint makes general allegations that "other students" have been permitted a third or fourth retake, he fails to state *any actual violation* of the Fourteenth Amendment. As to the third element, Congress did not abrogate the University's sovereign immunity. *See McCulley v. Univ. of Kansas School of Medicine*, No. 12-2587-JTM, 2013 U.S. Dist. LEXIS 51516 (D. Kan. Apr. 10, 2013) (finding no abrogation of sovereign immunity in the context of medical schools); *Guttman v. Khalsa*, 669 F.3d 1101 (10th Cir. 2012) (finding no abrogation of sovereign immunity in the context of medical licensing decisions); *Press v. State Univ. of New York at Stony Brook,* 388 F.Supp.2d 127 (E.D.N.Y.2005) (application of Title II to university's alleged denial of access to post-secondary education on basis of disability was not valid exercise of congressional power); *Johnson v. S. Conn. State Univ.,* No. 3:02-CV-2065, 2004 U.S. Dist. LEXIS 21084 (D. Conn. Sept. 30, 2004) (granting university's motion to dismiss plaintiff's claim under Title II of ADA on sovereign immunity grounds). Thus, Caston has not stated a claim for discrimination or failure to accommodate under Title II of the ADA.

> a.  Caston fails to state an ADA discrimination claim.

In order to establish a *prima facie* case of disability discrimination under Title II of the ADA, Caston must show that he: (1) has a disability; (2) is otherwise qualified for Wright State's Boonshoft School of Medicine; and (3) was excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of his disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). Wright State assumes, for purposes of this Motion, that Caston's allegations satisfy the first element of his *prima facie* case. However, he cannot satisfy the remaining two elements, both of which are required to state an ADA discrimination claim.

Caston's allegations do not support that he was otherwise qualified to continue in Wright State's Boonshoft School of Medicine. *Southeastern Community College v. Davis*, 442 U.S. 397,

406 (1979) ("An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap."). Irrespective of his alleged disability, Caston failed to maintain a level of performance necessary to continue in the program. Indeed, Caston failed the required curriculum including the "Staying Alive" exam twice. (Doc. 12, ¶13.) See *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432 (6th Cir. 1998); *Shaikh v. Lincoln Mem'l Univ.*, 608 Fed Appx. 349 (6th Cir. 2015).

Moreover, Caston's allegations do not suggest that action was taken against him because of, or on the basis of, his alleged disability. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 317 (6th Cir. 2012) (finding "because of" causation standard applies to ADA Title II claim). Indeed, Caston's First Amended Complaint *does not even allege* that he informed Wright State of his alleged disability prior to the Student Appeals Committee Process or that Wright State was aware of Caston's disability until *after* he had already failed to meet academic requirements and was subject to academic dismissal. Moreover, Caston *voluntarily withdrew* from the program before Wright State took any action against him. (Doc. 12, ¶ 14, 19.) He did not pursue additional remedies or appeal, deciding instead to withdraw so he could preserve his ability to pursue medical school elsewhere. (*Id*. at ¶15) Caston has not alleged animus or action by Wright State that would not have occurred "but for" his alleged disability. *Gohl v. Livonia Pub. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016). Thus, Caston has not alleged a plausible ADA discrimination claim upon which relief can be granted.

b.   Caston fails to state an ADA accommodation claim.

Caston also alleges that Wright State "discriminated against Plaintiff by failing to provide reasonable accommodations for his disability and by constructively causing his dismissal without considering or implementing such accommodations." (Doc. 12, ¶ 25.) In order to establish a *prima facie* case for failure to accommodate, Caston must establish that: (1) he is a disabled person within

7

the meaning of the ADA; (2) he is otherwise qualified to continue at the Wright State Boonshoft School of Medicine, with or without reasonable accommodation; (3) Wright State knew or had reason to know about his disability; (4) he requested an accommodation; and (5) Wright State failed to provide the necessary accommodation. *See, generally, Johnson v. Cleveland City Sch. Dist.*, 443 Fed. Appx. 974, 982 (6th Cir. 2011) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)). Universities have no duty to identify students with disabilities. Instead, a student must notify the University of the need for an accommodation. *Pierre v. Univ. of Dayton*, No. 3:15-cv-362, 2017 U.S. Dist. LEXIS 44442, at *28-29 (S.D. Ohio Mar. 27, 2017). For purposes of this Motion, Wright State assumes Caston's allegations that he has ADHD satisfies the first prong. However, he has not satisfied the remaining prongs, all of which are required to state an ADA accommodation claim.

As discussed above, Caston fails to set forth specific factual allegations establishing that he was qualified to continue in Wright State's Boonshoft School of Medicine. As to the third through fifth elements, Caston alleges that he made Wright State aware of his ADHD diagnosis "during his academic appeal hearing." (Doc. 12 ¶ 16). Caston does not, however, allege that he: (a) notified any Wright State official of his alleged diagnosis prior to his academic appeal hearing; (b) produced documentation to anyone at Wright State confirming a diagnosis of ADHD; or (c) timely requested accommodation for his ADHD disability.

"A publicly funded university is not required to provide accommodation to a student under the ADA or Rehabilitation Act until the student provides a proper diagnosis of his claimed disability and specifically requests an accommodation." *Shaikh*, 608 F. Appx. at 353 (quoting *Carten v. Kent State Univ.*, 78 F. Appx. 499, 500-01 (6th Cir. 2003). The First Amended Complaint establishes that Caston did not notify Wright State of any disability until *after* he was recommended for academic dismissal from the medical school for failing to pass the "Staying

Alive" test and was proceeding through the appeals process. (*Id*. at ¶16). Caston's after-the-fact accommodation request, if it was a request at all, was not timely. Because the allegations are insufficient to establish that Caston notified Wright State of his disability and timely requested accommodations for that disability, he cannot maintain his ADA accommodation claim.

### 2. Caston Fails to State a Claim for Disability Discrimination under the Rehabilitation Act.

In Count II of his First Amended Complaint, Caston alleges that Wright State discriminated against him in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"). "Claims brought under the Rehabilitation Act are generally reviewed under the same standards that govern ADA claims," with one exception. *Shaikh*, 608 Fed. Appx. at 353. Caston must prove he was discriminated against "*solely* because of the disability." *Plautz v. Potter*, 156 Fed. Appx 812, 816 (6th Cir. 2005).

Caston's First Amended Complaint does not allege that his disability was the sole reason for any adverse action taken against him by Wright State. Indeed, Caston concedes in his First Amended Complaint that he struggled academically. (Doc. 12, ¶¶ 12-13).  Moreover, Caston does not even allege that Wright State took adverse action *against* him – instead he alleges that he withdrew, rather than be subject to dismissal for his failure to meet academic requirements. (*Id.* ¶¶ 14, 15, 20). Caston has not and cannot state a claim that he was discriminated against solely because of his disability. *See Yates-Mattingly v. Univ. of Cincinnati*, No. 1:11-cv-753, 2012 U.S. Dist. LEXIS 124101, at *12 (S.D. Ohio Aug. 31, 2012) (dismissing Rehabilitation Act claim because Plaintiff failed to allege that disability was the sole reason for her termination from UC). Nor has he plausibly alleged that his disability was a reason, let alone the sole reason, for any alleged discrimination by Wright State. Just as Caston could not satisfy the elements of his ADA claim, he has not set forth the elements of a Rehabilitation Act discrimination claim either.

**C.** **To the Extent that Caston's First Amended Complaint Attempts to Bring State Law Tort Claims for Emotional Distress and Loss of Educational Opportunity Those are Subject to Dismissal under Fed. R. Civ. P. 12(b)(1).**

In his claim for relief, Caston demands he be awarded "compensatory damages for emotional distress and loss of educational opportunity". (Doc. 12 Relief ¶ 5). Caston does not properly assert any State tort claims in his First Amended Complaint, but to the extent this Court would construe these assertions as "claims", it lacks jurisdiction over such state law claims against Wright State. *See* Ohio Rev. Code § 2743.02(A)(1) (the State only consented to "have its liability determined, in the court of claims . . . "); Ohio Rev. Code § 2743.03(A)(1) ("The court of claims . . . has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in [R.C. § 2743.02] . . . "); *McCormick v. Miami University*, 693 F.3d 654, 654-665 (6th Cir. 2012).

**V.** **Conclusion**

This Court has no jurisdiction over Wright State and all claims against it should be dismissed. Even if jurisdiction attached, the Plaintiff's First Amended Complaint fails to assert plausible claims against Wright State. For these reasons, Wright State respectfully requests that the Court dismiss Plaintiff's claims against it in their entirety.

Respectfully submitted,

**DAVE YOST (0056290)**
**Ohio Attorney General**

*/s/ Elizabeth H. Smith*

_____
ELIZABETH H. SMITH (0076701)
ASHLEY A. BARBONE (0083666)
Assistant Attorneys General
Ohio Attorney General's Office
Education Section
30 East Broad Street, 16th Floor
Columbus, OH 43215
Telephone: (614) 644-7250
Facsimile: (614) 644-7634
Elizabeth.Smith@ohioago.gov
Ashley.Barbone@ohioago.gov

*Attorneys for Defendant Wright State University*

11

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically on March 16, 2026, and will be served on Plaintiff's counsel via this Court's electronic filing system.

*/s/ Elizabeth Hanning Smith*

_____
Elizabeth Hanning Smith (0076701)
Assistant Attorney General

12